Filed 7/21/26  AMAG v. Cassavetes CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| AMAG, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> NICHOLAS CASSAVETES, <br><br> Defendant and Appellant. | B337158 <br><br> (Los Angeles County <br> Super. Ct. Nos. 21STCV42730, <br> 23STCV04155) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed.

The Tym Firm and Ronald D. Tym for Plaintiff and Appellant.

Trope and Trope Law Group, Konrad L. Trope and Michael H. Weiss for Defendant and Appellant.

## INTRODUCTION

More than a decade ago, AMAG, Inc. (AMAG) loaned $1 million to a film production company to complete work on a film written and directed by Nicholas Cassavetes (Cassavetes). Cassavetes personally guaranteed the loan. The borrower defaulted on the loan, spawning multiple lawsuits that give rise to this appeal. In the first action, AMAG sued Cassavetes to enforce the personal guaranty and Cassavetes cross-complained against AMAG, attacking the guaranty's enforceability. In a second lawsuit, the borrower's successor-in-interest sued AMAG, alleging AMAG unreasonably failed to commercially exploit the loan collateral to reduce the outstanding loan balance. The trial court consolidated the actions and granted its own motion for judgment on the pleadings on every operative pleading and cause of action asserted by the parties.

Cassavetes now appeals, arguing the trial court erred in denying a motion for leave to amend his cross-complaint and in declining to rule on summary judgment motions which were pending when the court granted judgment on the pleadings. AMAG cross-appeals, arguing the trial court erred in granting judgment on the pleadings on its complaint against Cassavetes.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    *Loan Agreement*

In September 2011, AMAG loaned $1 million to Yellow Productions, LLC (YP), an Oklahoma limited liability company, to complete production on the film "Yellow." As collateral for the loan, YP granted AMAG a first-priority security interest in the film, including all rights and title in the film.

2

As part of the loan, Cassavetes executed a continuing personal guaranty under which he agreed to be liable for "any and all indebtedness of [YP] to AMAG, Inc., . . . arising under the Loan Agreement, Secured Promissory Note and all other documents and agreements executed by [YP] in connection with the Loan Agreement."

YP defaulted on the loan. In 2017, AMAG sued YP to collect on the outstanding loan balance, ultimately securing a default judgment against YP for approximately $500,000. In 2020, the Oklahoma Secretary of State cancelled YP's charter for failure to pay annual registration fees. In 2023, the charter was reinstated under the name New Yellow Productions, LLC (New Yellow).

## II.    *Litigation*

In November 2021, AMAG filed suit against Cassavetes, seeking to enforce the personal guaranty to recover approximately $325,000 still outstanding on the loan. AMAG's complaint against Cassavetes alleged a single cause of action for breach of contract, claiming Cassavetes breached the personal guaranty by "failing to make the payment to AMAG of the amounts due" under the guaranty.

In response, Cassavetes cross-complained against AMAG, alleging causes of action for declaratory relief and breach of contract. Cassavetes' cross-complaint claimed that AMAG forced him to sign the personal guaranty under duress. Cassavetes' declaratory relief claim sought a determination that his obligations under the guaranty were "null and void or otherwise fulfilled or fully mitigated." His cause of action for breach of contract alleged that AMAG breached the implied covenant of good faith and fair dealing by forcing him to sign the guaranty under duress. Cassavetes also asserted that

3

"AMAG foreclosed on the copyright of [Yellow] and thus, owns all rights, title and interest" in the film.

A.     *Motion for Leave to Amend*

In March 2022, Cassavetes filed a motion for leave to amend his cross-complaint. As relevant on appeal, Cassavetes' proposed first amended cross-complaint sought to add causes of action for fraud and for violation of the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.).

Cassavetes' proposed fraud claim alleged that one of AMAG's agents told him that there "was 'zero chance' that AMAG would ever seek to enforce the personal guarantee." The proposed cross-complaint did not identify how Cassavetes was damaged by AMAG's alleged fraud. Instead, it simply stated that "Cassavetes seeks damages in excess of $300,000." In his proposed cause of action under the UCL, Cassavetes stated that AMAG engaged in unlawful business practices under the UCL without identifying what those acts were. He again claimed "that he has been damaged in excess of $300,000" without identifying how he was harmed by AMAG's alleged violation of the UCL.

The reporter's transcript from the hearing on Cassavetes' motion does not appear in the record on appeal. After the hearing, the trial court entered a minute order indicating that its tentative decision was to deny the motion because the proposed amended cross-complaint failed to allege any actionable damages. However, the court allowed the parties to submit additional briefing on the subject and took the matter under submission. In his supplemental briefing, Cassavetes argued that he suffered damages in the form of the attorneys' fees he incurred in defending against AMAG's lawsuit and could therefore recover those attorneys' fees as tort damages in his

4

proposed amended cross-complaint. The trial court denied the motion, concluding that "[n]o damages have been suffered."

B. *Cassavetes' First Summary Judgment Motion*

In October 2022, Cassavetes filed a motion for summary judgment on AMAG's complaint, arguing AMAG's claim against him was barred because AMAG failed to comply with Commercial Code sections 9610 and 9624 to exploit the loan collateral to reduce the outstanding loan balance.[1] Cassavetes' motion was based on the affirmative defenses asserted in his answer, specifically that AMAG failed to mitigate its damages and Cassavetes was excused from performing under the guaranty. Cassavetes also asserted that as part of the default judgment against YP, "AMAG foreclosed on the copyright of the [film] and thus, owns all rights, titles and interests of any kind" to it.

In a January 18, 2023, order, the trial court noted Cassavetes' motion appeared to be "based on erroneous factual suppositions and legal conclusions." In particular, the court noted Cassavetes' motion and cross-complaint both alleged that AMAG now owned the film. The court determined this allegation was inconsistent with Cassavetes' attempt to invoke sections 9610 and 9624 because those statutes applied only to holders of a security interest and did not apply to property owners. In response, Cassavetes voluntarily withdrew his summary judgment motion from the court's consideration.

---

[1] All further statutory references are to the Commercial Code unless otherwise specified.

5

C.    *Second Lawsuit and Consolidated Proceedings*

In February 2023, New Yellow filed suit against AMAG, asserting that by reviving YP's corporate charter, New Yellow assumed YP's rights and obligations in connection with AMAG's loan. New Yellow alleged that AMAG failed to exercise reasonable care in the custody and preservation of the loan collateral (§ 9207) and failed to dispose of the collateral in a commercially reasonable manner (§ 9610). Specifically, New Yellow alleged AMAG breached its obligations under the Commercial Code by holding onto the film for years without commercially exploiting it to reduce the outstanding loan debt. The trial court consolidated AMAG's action against Cassavetes and New Yellow's action against AMAG for all purposes.

Cassavetes and New Yellow both brought summary judgment motions based on AMAG's purported failure to fulfill its obligations under the Commercial Code to commercially exploit the film.[2] The only relief Cassavetes sought was the determination that AMAG's action against him "is barred and . . . must be dismissed with prejudice."

AMAG opposed both motions. Among other things, AMAG pointed to expert testimony that the film had no value in the marketplace given several factors beyond AMAG's control. In response, New Yellow and Cassavetes filed a joint reply in support of their summary judgment motions. In their joint filing, New Yellow and Cassavetes acknowledged that "there appears to be a bona fide factual dispute concerning the value of the collateral that precludes summary judgment at this time." However, they claimed the trial court could nonetheless "still grant summary adjudication of whether

---

[2]    While both motions are captioned as alternative motions for summary adjudication, neither motion satisfies the requirements for summary adjudication motions imposed by California Rules of Court, rules 3.1350(d) and 3.1350(h).

6

Cassavetes has a valid defense based upon AMAG's failure to dispose [of] the Collateral in a commercially reasonable manner."

D.    *Motion for Judgment on the Pleadings*

The trial court never ruled on the summary judgment motions filed by Cassavetes and New Yellow.  Instead, approximately one month after Cassavetes and New Yellow filed their reply, the trial court sua sponte brought a motion for judgment on the pleadings on each complaint and cross-complaint in the consolidated action.  (Code Civ. Proc., § 438.)  The trial court set a briefing schedule for the motion and took the pending summary judgment motions off calendar "pending the outcome" of the motion for judgment on the pleadings.

In January 2024, the trial court entered an order granting its motion for judgment on the pleadings on AMAG's complaint, New Yellow's complaint, and Cassavetes' cross-complaint.  The court determined that AMAG could not allege an actionable breach of contract stemming from YP's 2012 default on the loan because such a claim would be barred by the applicable statute of limitations.  The court also rejected AMAG's argument that it could assert a viable cause of action against Cassavetes stemming from his failure to satisfy the 2017 default judgment against YP.  The court reasoned that due process barred AMAG from enforcing the 2017 default judgment against Cassavetes as he was not a party to the 2017 litigation. The court also examined the language of the guaranty and determined that Cassavetes was only obligated to satisfy YP's indebtedness arising from the loan agreement or some other document that was "executed by" YP.  The court reasoned that because YP never executed the default judgment, the

7

default judgment fell beyond the scope of Cassavetes' obligations under the personal guaranty.

The trial court also dismissed New Yellow's complaint against AMAG, concluding that New Yellow no longer held an interest in the loan collateral and therefore did not have standing to assert its causes of action under the Commercial Code regarding AMAG's disposition of the loan collateral. Turning to Cassavetes' cross-complaint against AMAG, the trial court determined that his causes of action for declaratory relief and breach of contract were now moot as those claims only sought to nullify Cassavetes' liability under the guaranty. The court concluded that in the absence of any liability under the guaranty, Cassavetes could not plead the element of damages required to assert a claim for breach of contract.

On January 25, 2024, the trial court entered judgment in the consolidated action, concluding that all parties were "to recover nothing" on their respective pleadings. Cassavetes and New Yellow timely appealed the trial court's judgment and AMAG timely cross-appealed. New Yellow subsequently withdrew its appeal.[3]

## DISCUSSION

I. *Cassavetes' Appeal*

Cassavetes raises two claims of error on appeal: (1) that the trial court erred in denying his motion to amend his cross-complaint to assert causes of action for fraud and for violation of the UCL; and (2) the trial court erred by not ruling on the three motions for summary judgment filed by Cassavetes and New Yellow.

---

[3] As New Yellow has withdrawn its appeal, its August 2, 2024, motion to augment the record on appeal is denied as moot.

A.    *Motion for Leave to Amend the Cross-Complaint*

1.    *Legal Standards*

"We review the denial of a motion for leave to amend for abuse of discretion."  (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1000.)  "'A trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding.'"  (*Ventura Coastal, LLC v. Occupational Safety & Health Appeals Bd.* (2020) 58 Cal.App.5th 1, 32; see Code Civ. Proc., § 473, subd. (a)(1).)  However, "leave to amend should *not* be granted where, in all probability, amendment would be futile."  (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685; *Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1124.)  "Of course, if the proposed amendment fails to state a cause of action, it is proper to deny leave to amend."  (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230.)

Cassavetes argues the trial court erred in rejecting his request to add a cause of action for fraud because it wrongfully determined he had not suffered any cognizable damages.  He also alleges the trial court should have granted his request to assert a cause of action for violation of the UCL based on AMAG's purported failure to commercially exploit the film following YP's default on the loan.  We find no abuse of discretion by the trial court.

2.    *Fraud*

"'The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  "In California, fraud must be pled specifically; general and

9

conclusory allegations do not suffice." (*Id.* at p. 645.)  Accordingly, plaintiffs may not rely on the policy of liberal construction of the pleadings to sustain a defectively pled fraud claim.  (*Lesperance v. North American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 344.)

There is no question Cassavetes' proposed amended cross-complaint failed to plead the element of damages with particularity.  His proposed cross-complaint does not identify how he was damaged by AMAG's fraudulent representations; instead, it merely alleges in a perfunctory fashion that "Cassavetes seeks damages in excess of $300,000."  This is insufficient.  On appeal, Cassavetes argues that he could have alleged damages in the form of attorneys' fees and costs he incurred in defending AMAG's suit.  We conclude it would have been futile to do so because California's litigation privilege bars Cassavetes from recovering such damages.[4]  (Civ. Code, § 47, subd. (b).)

"[T]he litigation privilege operates to preclude liability for tort damages based on a publication or broadcast made in any judicial proceeding." (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 289.)  The privilege extends to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  "The breadth of the litigation privilege cannot be understated.  It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." (*Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 333.)

---

[4]    We offered the parties an opportunity to provide supplemental briefing on the applicability of the litigation privilege.  (Gov. Code, § 68081.)

"A threshold issue in determining if the litigation privilege applies is whether the alleged injury arises from a communicative act or noncommunicative conduct." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1248; accord *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058 (*Rusheen*).) Here, Cassavetes sought to assert a claim for fraud against AMAG to recover the attorneys' fees and costs he incurred in defending against AMAG's lawsuit. It is undisputed that until AMAG filed suit against him, Cassavetes did not suffer any damages or injury in connection with the guaranty or AMAG's alleged fraudulent inducement. Therefore, the injury-producing conduct was AMAG's filing of its complaint. Our California Supreme Court has expressly recognized that the "filing of pleadings" is a communicative act that falls within the litigation privilege. (*Rusheen, supra*, 37 Cal.4th at p. 1058.)

The litigation privilege therefore bars Cassavetes from recovering his attorneys' fees as tort damages in connection with his proposed fraud claim. Cassavetes has not identified any other harm he allegedly suffered from AMAG's conduct. As Cassavetes' proposed amended cross-complaint did not state a viable claim for fraud against AMAG, we find no error by the trial court in denying his motion to add a fraud claim to his cross-complaint.

3. *Unfair Competition Law (Bus. & Prof. Code, § 17200)*

Cassavetes also argues the trial court erred in denying him leave to assert a cause of action under the UCL based on AMAG's purported failure to carry out its obligations under the Commercial Code to dispose of the film in a commercially reasonable manner.

"'A "private person has standing to sue under the UCL only if that person has suffered injury and lost money or property 'as a result of such

11

unfair competition.' [Citation.]" [Citation.] To satisfy the UCL standing requirement, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." [Citation.]' [Citation.] 'In order to pursue a UCL claim, the plaintiff must show that the practices that it characterizes as unlawful caused it to suffer an actual economic injury.' [Citation.]" (*Demeter v. Taxi Computer Services, Inc.* (2018) 21 Cal.App.5th 903, 915 (*Demeter*); see also Bus. & Prof. Code, § 17204.)

To sufficiently state a cause of action under the UCL, a party "must state with reasonable particularity the facts supporting the statutory elements of the violation." (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619.) A pleading fails to state a cause of action under the UCL if it "identifies no particular section of the statutory scheme which was violated and fails to describe with any reasonable particularity the facts supporting violation." (*Ibid.*)

Applying those rules to Cassavetes' proposed amended cross-complaint shows that he failed to plead a valid cause of action for violation of the UCL. As with his proposed fraud claim, Cassavetes' proposed UCL claim stated in generalized terms that he was damaged "in excess of $300,000." It does not allege how he was damaged or how he arrived at this $300,000 figure. As with his fraud claim, Cassavetes has failed to allege any cognizable economic injury he suffered in connection with his UCL claim. His proposed cross-complaint therefore failed to establish he suffered an economic injury necessary to establish standing to bring a UCL claim against AMAG. (*Demeter, supra,* 21 Cal.App.5th at p. 915; Bus. & Prof. Code, § 17204.) We

12

therefore find no abuse of discretion in the trial court's denial of Cassavetes' motion for leave to amend.

B.    *Motions for Summary Judgment*

Cassavetes contends the trial court erred in declining to rule on either of his summary judgment motions or the summary judgment motion filed by New Yellow.  We reject this argument for several reasons.

First, to the extent Cassavetes argues the trial court erred by ruling on its motion for judgment on the pleadings before ruling on the summary judgment motions, we are not persuaded.  As our Supreme Court has recognized, "courts have inherent authority to control their own calendars and dockets." (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267.)  As part of this authority, Code of Civil Procedure section 438, subdivision (b)(2), expressly gives the trial court the power to grant judgment on the pleadings "upon its own motion."  Cassavetes has provided no authority suggesting the court was barred from bringing or resolving its own motion for judgment on the pleadings before ruling on the pending summary judgment motions.  "It is the parties' responsibility to support claims of error with meaningful argument and citation to authority.  [Citations.]  When they do not furnish legal argument with citation to authority on a particular point, we may treat the point as forfeited and pass it without consideration.  [Citations.]" (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 754.)

Second, Cassavetes acknowledges that he decided to voluntarily withdraw his first summary judgment motion from the court's consideration. He has therefore waived any claim of error arising from the trial court's failure to rule on the merits of that motion.  "Under the doctrine of waiver, a party loses the right to appeal an issue caused by affirmative conduct or by

13

failing to take the proper steps at trial to avoid or correct the error. [Citation.]" (*Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1167.) Having affirmatively and voluntarily withdrawn his first summary judgment motion from the trial court's consideration, he has waived any argument that the trial court erred by not considering it.

Third, in briefing their summary judgment motions below, Cassavetes and New Yellow both expressly conceded that summary judgment was inappropriate, and instead all they were seeking in their motions was a judicial determination that "Cassavetes has a valid defense" to AMAG's complaint.[5] The trial court's entry of judgment in Cassavetes' favor on AMAG's complaint rendered this question moot.

Even if we were to assume that Cassavetes was entitled to summary adjudication on his affirmative defense of failure to mitigate, the end result would be the same: a judgment that AMAG take nothing from Cassavetes on its complaint against him. Having obtained that exact result in the trial court, Cassavetes has not demonstrated any prejudice flowing from the trial court's determination that the entry of judgment on the pleadings mooted his request for summary adjudication. "'[W]e review the trial court's rulings and not its reasoning.' [Citation.]" (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)

We therefore find no error by the trial court in connection with the motions for summary judgment.

---

[5] Having conceded below that there was a triable issue of material fact that precluded the court from granting summary judgment in Cassavetes' favor, Cassavetes has not established any prejudice from the trial court's failure to reach the merits of his arguments in favor of summary judgment.

II.     *AMAG's Cross Appeal*

On appeal, AMAG does not dispute that a claim for breach of the guaranty arising from YP's default on the loan in 2012 is barred by the statute of limitations.  Instead, AMAG argues that its claim for breach of contract arises from Cassavetes' failure to satisfy YP's obligations under the 2017 default judgment and was therefore brought within the limitations period.  AMAG argues the trial court erred in concluding that Cassavetes had no obligation under the guaranty to satisfy the 2017 default judgment against YP.  We conclude AMAG has failed to establish error by the trial court and affirm.

"We independently review the superior court's ruling on a motion for judgment on the pleadings to determine whether the complaint states a cause of action.  In so doing, we must accept the factual allegations of the pleadings as true and construe them liberally.  [Citation.]  If a judgment on the pleadings is correct on any theory of law applicable to the case, we will affirm it regardless of the considerations used by the superior court to reach its conclusion.  [Citation.]" (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 184–185.)

AMAG's argument on appeal focuses on seemingly contradictory language in paragraphs 1 and 3 of the guaranty.  Paragraph 1 provides in pertinent part that Cassavetes "unconditionally guarantees and promises to make upon demand the payment when due . . . any and all indebtedness of [YP] to AMAG . . . arising under the Loan Agreement, Secured Promissory Note and all other documents and agreements executed by [YP] in connection with the Loan Agreement."  However, paragraph 3 of the guaranty appears to provide a more expansive definition of Cassavetes' obligations under the agreement, stating that Cassavetes "unconditionally guaranties the payment

15

of any and all indebtedness of [YP] to AMAG . . . upon . . . default of the payment of any obligation or indebtedness owed by [YP] to AMAG."

AMAG argues the trial court erred in relying on the language of paragraph 1 to conclude that Cassavetes had no obligation to satisfy the default judgment because it was not "executed by" YP. Instead, AMAG argues the trial court should have adopted the more expansive language of paragraph 3 to find that Cassavetes was obligated to satisfy "any obligation or indebtedness" of YP, which included the 2017 default judgment.

The issue here is one of contract interpretation. "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties at the time of contract formation. (Civ. Code, § 1636.) 'We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. [Citations.] We consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation. [Citation.] We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. [Citation.] If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs.'" (*Ford v. The Silver F, Inc.* (2025) 110 Cal.App.5th 553, 565–566.)

The interpretation of a written contract is a question of law subject to de novo review. (*Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1158; *Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227.) However, "on appeal, the trial court's judgment is presumed correct, and the burden is on the Appellants to demonstrate reversible error. [Citation.] This is true even on de novo review." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708.)

16

We cannot conclude the trial court's interpretation of the guaranty was erroneous. We must interpret the guaranty as a whole and in the context and circumstances in which it was made. Here, there is no question that Cassavetes only signed the guaranty to secure the loan to YP. When read in this context, the language of paragraph 1 reasonably limits Cassavetes' obligations under the guaranty to satisfying YP's debts under the loan agreement rather than any and all future debts YP incurred.

This conclusion is further bolstered by the loan documents themselves. The loan agreement between YP and AMAG acknowledged that the loan was conditioned on Cassavetes personally guaranteeing "payment of all amounts due and owing under [the loan]." In this sense, the loan agreement itself also contemplated that Cassavetes' obligations to AMAG would be limited to covering YP's obligations under the loan rather than guaranteeing all obligations YP may ever incur in the future, whether arising from the loan or not. The language from the loan agreement is consistent with the limits imposed by paragraph 1 of the guaranty.

"[W]hen interpreting a contract, we strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable." (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507.) Here, adopting AMAG's argument would render the limiting language of paragraph 1 superfluous.[6] AMAG's argument that paragraph 1 is meant to define

---

[6]    We reject AMAG's contention that the trial court's interpretation of paragraph 1 would render superfluous the phrase "whether voluntary or involuntary" as used in the definition of "indebtedness" in paragraph 2 of the guaranty. This language is meant to be illustrative of the parties' intention that "[t]he word '**indebtedness**' is used herein in its most comprehensive sense," rather than a substantive description of the scope of the guaranty.

Cassavetes' present obligations while paragraph 3 defines his future obligations has no support in the text of the guaranty.

At most, we can say the guaranty is subject to two differing, reasonable interpretations under the language of paragraphs 1 and 3.  But this is not sufficient to establish reversible error by the trial court.  "[A]n appellate court must determine that the trial court's interpretation is erroneous" and not merely "'one of two or more reasonable constructions'" or an "'equally tenable'" interpretation "before it may properly reverse a judgment." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866; see also *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 706 [where the trial court's interpretation of a written instrument is consistent with the intent of the parties, an appellate court will not reverse simply because the language is susceptible to a different, "equally tenable" construction].)

We conclude that AMAG has not carried its burden on appeal to establish the trial court's interpretation of the scope of the guaranty was erroneous.  As this determination is sufficient to affirm the trial court's grant of judgment on the pleadings on AMAG's complaint, we need not reach AMAG's other arguments and decline to do so.

## DISPOSITION

The judgment is affirmed.  Cassavetes' motion for sanctions is denied. The parties are to bear their own costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


ZUKIN, P. J.

We concur:


TAMZARIAN, J.



COGLIATI, J.*

---

*     Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.